**Opinion filed October 31, 2017**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-15-00277-CR & 11-15-00278-CR

_____

## SHANNA LYNN HUGHITT, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 35th District Court

### Brown County, Texas

### Trial Court Nos. CR23116 & CR23242

## O P I N I O N

The jury convicted Shanna Lynn Hughitt of two offenses: (1) engaging in organized criminal activity (Cause No. 11-15-00277-CR) and (2) possession with intent to deliver between four and 200 grams of methamphetamine in a drug-free zone (Cause No. 11-15-00278-CR). The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for eighteen years for the offense of engaging in organized criminal activity

and ten years for the offense of possession with intent to deliver in a drug-free zone. The trial court ordered that the sentences run consecutively.

Appellant presents three issues on appeal. She asserts in her first issue that the trial court erred in denying her motion to quash the indictment and her motion for directed verdict on the charge of engaging in organized criminal activity. In her second issue, she challenges the sufficiency of the evidence supporting both convictions. In her third issue, Appellant contends that her trial counsel was ineffective.

Because the indictment in Cause No. 11-15-00277-CR failed to allege an offense, we vacate the judgment of conviction for engaging in organized criminal activity and dismiss the indictment. Further, we conclude that there is insufficient evidence to support a conviction for possession with intent to deliver methamphetamine in an amount between four and 200 grams in Cause No. 11-15-00278-CR. However, because we find that the evidence is sufficient to support the lesser included offense of possession with intent to deliver methamphetamine in an amount between one and four grams, we remand that cause to the trial court to reform the judgment and to conduct a new trial as to punishment only.

*Background Facts*

This case originated from an investigation called "Operation Tangled Web," which was undertaken by the Brown County Sheriff's Department over a period of several months The purpose of Operation Tangled Web was to conduct surveillance on a group of people involved in methamphetamine distribution in Brownwood. Investigator Carlyle Noe Gover, a narcotics investigator for the Brown County Sheriff's Department, conducted surveillance of Kevin Sliger. Sliger was a drug dealer. He brought methamphetamine into Brown County from the Dallas-Fort Worth Metroplex and participated in buying and selling

methamphetamine with several other drug dealers in Brownwood. Appellant was Sliger's romantic partner.[1]

Appellant and Sliger used methamphetamine together. Appellant often drove Sliger around because Sliger did not have a driver's license. Appellant was present during a drug transaction between Sliger and another drug dealer named Butch Landon Spearman. Appellant and Sliger stayed together and moved from place to place until January 8, 2014, when Appellant and Sliger moved into a house on Eighth Street. Appellant paid the rent and utilities for the house. The house on Eighth Street was within 1,000 feet of a youth activity center.

On January 15, 2014, law enforcement executed a search warrant on the house on Eighth Street. Appellant and Sliger were both present in the house during the search. Sliger was in the dining room. On Sliger's person, police found approximately thirty-two grams of "cut" (an additive used by drug dealers to dilute drugs), over sixteen grams of methamphetamine, some cocaine, some morphine tablets, lottery tickets, and forty-four dollars in cash. Elsewhere in the dining room, police found marihuana residue and rolling paper.

Appellant was located in the back bedroom. On her person, police found a little over one gram of methamphetamine. On the mattress where Appellant was sitting, police found a broken methamphetamine pipe and a gallon ziplock bag with methamphetamine residue inside. In the bedroom closet, police found almost an ounce of marihuana. Inside the pocket of a pair of men's jeans, police found $786 in cash.

In the kitchen, police found a bean can containing two quarts of "cut." Throughout the house and in plain view, police found packaging, syringes, scales, and a police scanner. Additionally, police found a surveillance camera in the front

---

[1]At trial, the extent of Appellant and Sliger's romantic involvement was contested. However, Appellant concedes that she and Sliger had an "on-again, off-again" relationship.

bedroom window.  The contents of the house indicated that both a male and a female lived there.

In addition to Sliger, Operation Tangled Web involved surveillance of several other individuals who were a part of a network of methamphetamine distributors in Brown County, including John Philip Couch, John Simon Armendarez, Butch Landon Spearman, Auston Welker, Chad Cooper, Carri Vickers, Charles Burt, and others.  Together, these distributors moved well over 400 grams of metham-phetamine into Brown County.

The trial court recognized Investigator Gover and Sergeant James Stroope as experts in narcotics.  Investigator Gover and Sergeant Stroope both opined that it is common for a male drug dealer to use a female companion to transport narcotics because it is more difficult for male law enforcement officers to search a female. Sergeant Stroope opined that it is common for someone in a relationship with a drug dealer to benefit from that relationship by receiving houses, cars, phones, clothing, food, and money.  Investigator Gover opined that the fact that the house on Eighth Street had drug paraphernalia, such as packaging, syringes, and scales, in plain view was an indication that there were no innocent parties residing in the house.

*Analysis*

*Engaging in Organized Criminal Activity*

In Appellant's first issue, she asserts that possession with intent to deliver is not one of the enumerated offenses that may form the basis of a conviction for engaging in organized criminal activity.  She contends that the trial court erred in denying her motion to quash the indictment in Cause No. 11-15-00277-CR based upon this contention.  We agree.

Sufficiency of an indictment is a question of law.  *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).  Accordingly, we review de novo a trial court's ruling on a motion to quash an indictment.  *See id.*  The indictment must state facts

4

that, if proved, show a violation of the law; the indictment must be dismissed if such facts would not constitute a criminal offense. *Posey v. State*, 545 S.W.2d 162, 163 (Tex. Crim. App. 1977); *Rotenberry v. State*, 245 S.W.3d 583, 586 (Tex. App.— Fort Worth 2007, pet. ref'd).

The State sought to prosecute Appellant for engaging in organized criminal activity pursuant to Section 71.02 of the Texas Penal Code. TEX. PENAL CODE ANN. § 71.02 (West Supp. 2016). Under that statute, a person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . , [she] commits or conspires to commit one or more [enumerated offenses]." *Id.* § 71.02(a); *see Hart v. State*, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002).

The enumerated offense alleged in the indictment was "Possession of a Controlled Substance with Intent to Deliver in an amount of 400 grams or more." That specific offense does not appear within the list of enumerated offenses described in the organized crime statute. *See* PENAL § 71.02(a)(1)–(18). We note at the outset of our analysis that two of our sister courts have recently held that possession with intent to deliver is not a proper predicate offense for engaging in organized criminal activity under Section 71.02(a). *Walker v. State*, No. 07-16-00245-CR, 2017 WL 1292006, at *2 (Tex. App.—Amarillo Mar. 30, 2017, pet. granted) (mem. op., not designated for publication); *State v. Foster*, No. 06-13-00190-CR, 2014 WL 2466145, at *2–3 (Tex. App.—Texarkana June 2, 2014, pet. ref'd) (mem. op., not designated for publication).

Among the list of enumerated offenses is "unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug, or unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception." PENAL § 71.02(a)(5). As noted by the Texarkana Court of Appeals, "[p]ossession of a controlled substance with intent to deliver does

not explicitly violate Texas' organized crime statute, but delivery of controlled substances does."[2]  *Foster*, 2014 WL 2466145, at *1.  The State contends that possession with intent to deliver is encompassed within the meaning of "delivery" found in Section 71.02.  The State bases this contention on Section 481.112 of the Texas Health and Safety Code, which sets out a list of offenses for manufacture and delivery of controlled substances in Penalty Group 1.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017) ("[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1.").  The State asserts that, under Section 481.112, possession with intent to deliver is the equivalent of delivery.

The State presented the same argument in *Foster*.  The Texarkana Court of Appeals rejected this argument, explaining that incorporating "possession with intent to deliver" into the meaning of "delivery" under Section 71.02 of the Penal Code is inconsistent with the definition of the term "deliver" in the Controlled Substances Act, which means "to transfer, actually or constructively, to another a controlled substance."  *Foster*, 2014 WL 2466145, at *2–3 (citing HEALTH & SAFETY § 481.002(8)).  We additionally note that the Amarillo Court of Appeals agreed with *Foster*'s holding.  *Walker*, 2017 WL 1292006, at *2.[3]  We also agree with the analysis in *Foster* and conclude that possession of a controlled substance with the intent to deliver does not constitute a proper predicate offense for engaging in organized criminal activity under Section 71.02(a).

---

[2]The court noted in *Foster* that Section 71.02(a)(5) also includes unlawful "possession of a controlled substance or dangerous drug *through forgery, fraud, misrepresentation, or deception*."  *Foster*, 2014 WL 2466145, at *1 n.1 (emphasis added).  As was the case in *Foster*, this provision is not applicable here.

[3]In *Walker*, the Court of Criminal Appeals granted the State's petition for discretionary review on August 23, 2017.  We note that the State did not seek a review of the Amarillo Court of Appeals' determination that possession with intent to deliver is not a proper predicate offense under Section 71.02 but, rather, sought a review of the disposition of the case ordered by the Amarillo Court of Appeals.

The indictment in Cause No. 11-15-00277-CR failed to allege an offense under Section 71.02 for engaging in organized criminal activity. Thus, the trial court should have granted Appellant's motion to quash the indictment. We sustain Appellant's first issue to the extent that it challenges the trial court's ruling on the motion to quash. We need not consider the remainder of Appellant's first issue or the portions of her second and third issues challenging her conviction for engaging in organized criminal activity because her successful challenge to the indictment is dispositive of her appeal of that conviction. *See Rotenberry*, 245 S.W.3d at 589 (citing Tex. R. App. P. 47.1). We vacate the trial court's judgment of conviction in Cause No. 11-15-00277-CR and dismiss the indictment. *See* Tex. R. App. P. 43.2(e); *Rotenberry*, 245 S.W.3d at 589.

*Possession with Intent to Deliver*

In Appellant's second issue, she asserts that the evidence is insufficient to support her conviction for possession with the intent to deliver methamphetamine in an amount between four and 200 grams in a drug-free zone. She focuses her evidentiary challenge on two contentions. Appellant contests the amount of methamphetamine that the evidence showed she possessed. She also challenges the evidence supporting the element that she possessed any methamphetamine with an intent to deliver it.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the

7

evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is undisputed that Appellant was in possession of a little over one gram of methamphetamine. Therefore, in order to convict Appellant of possession of between four and 200 grams of methamphetamine, the State needed to show that Appellant had possession of the sixteen grams of methamphetamine found on Sliger's person. A person need not have exclusive possession of a controlled substance in order to be guilty of possession—joint possession will suffice. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Appellant asserts that the evidence failed to demonstrate that she jointly possessed the methamphetamine found in Sliger's pocket. We agree.

A person commits the offense of possession with intent to deliver a controlled substance if she knowingly possesses a drug with the intent to deliver it. *See* HEALTH & SAFETY § 481.112(a). Possession is defined as "actual care, custody, control, or management." PENAL § 1.07(a)(39). To prove unlawful possession of a controlled substance, the State must show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005),

8

*overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). The evidence must establish that the accused's connection with the drugs is more than just her fortuitous proximity to someone else's drugs. *Id.* at 405–06.

Texas courts have formulated the "affirmative links rule," which provides that, "[w]hen the accused is not in exclusive possession *of the place where the substance is found*, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* at 406 (alteration in original) (emphasis added) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts).[4] The affirmative links rule is routinely employed to establish joint possession when the accused is not in exclusive possession of the place where the drugs are found. *Poindexter*, 153 S.W.3d at 406. "This rule simply restates the common-sense notion that a person— such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

---

[4]Courts have identified the following factors as affirmative links that may establish an accused's knowing possession of a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to, and the accessibility of, the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed narcotics or other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. Many of these same factors have been used by courts to determine if a person possessed a controlled substance with the intent to deliver. *See Guttery v. State*, No. 11-12-00160-CR, 2014 WL 3398144, at *2–3 (Tex. App.—Eastland July 10, 2014, pet. ref'd).

The State relies on an "affirmative links" analysis to establish that Appellant had care, custody, or control of all of the methamphetamine found as a result of the officer's search pursuant to the search warrant. However, the affirmative links analysis is not readily applicable because the sixteen grams of methamphetamine were not found in a place that was in the joint possession of Appellant and Sliger but, rather, were found in Sliger's exclusive possession—in his pocket. There is no evidence that Appellant exercised control, management, or care over the methamphetamine found in Sliger's pocket.

In *Ward v. State*, the Texarkana Court of Appeals had to decide if there was sufficient evidence to convict the defendant of possession of drugs that were found on his companion. *Ward v. State*, No. 06-16-00059-CR, 2016 WL 7175292, at *1 (Tex. App.—Texarkana Dec. 9, 2016, pet. ref'd) (mem. op., not designated for publication). In that case, the defendant and a female companion were in a vehicle together when law enforcement pulled them over. *Id.* Law enforcement noticed movement between the defendant and his companion that indicated that the defendant had passed her the drugs. *Id.* at *3. The court determined that this was sufficient evidence to convict the defendant of possession of the drugs, even though they were found on his companion. *Id.* at *3–4. In reaching this result, the court did not conduct an affirmative links analysis to determine if the defendant knowingly possessed the drugs found on his companion.

*Ward* is distinguishable from this case. Here, there is no evidence that Appellant passed the sixteen grams of methamphetamine to Sliger. In fact, during the search of the house, law enforcement found Appellant and Sliger in different rooms. To infer that Appellant had any care, custody, or control of the methamphetamine found in Sliger's pocket would be speculation. Although Appellant leased the house, was a drug user, and had drug paraphernalia and cash at the house, Sliger exclusively possessed the large amount of methamphetamine

10

contained within a single baggie in his pocket, and no one testified that Appellant knew about the drugs in Sliger's pocket. Therefore, there is insufficient evidence to convict Appellant of possession of between four and 200 grams of methamphetamine.

Because we have found that the evidence is insufficient to support Appellant's conviction for possession with the intent to deliver methamphetamine in an amount between four and 200 grams, we must now decide whether the conviction should be reformed to reflect a conviction for the lesser included offense of possession with intent to deliver between one and four grams. *See Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014). A conviction should be reformed when (1) every element necessary to prove the lesser included offense was found when Appellant was convicted of the greater offense and (2) the evidence is sufficient to support a conviction for the lesser included offense. *Id.* at 300. Possession with intent to deliver methamphetamine, if between one and four grams, is a lesser included offense of possession with intent to deliver methamphetamine in an amount between four and 200 grams. *See* HEALTH & SAFETY § 481.112(c), (d). Therefore, we will review the evidence to determine whether it is sufficient to support a conviction for possession with intent to deliver methamphetamine in an amount between one and four grams. *See Thornton*, 425 S.W.3d at 300. As noted previously, there is no dispute that Appellant possessed over one gram of methamphetamine. Accordingly, we direct our analysis on the "intent to deliver" element.

"'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . ." HEALTH & SAFETY § 481.002(8). Intent to deliver may be proved with circumstantial evidence, including evidence that the defendant possessed the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "Intent can be inferred from the acts, words, and conduct of

11

the accused." *Id.* at 326 (quoting *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). The expert testimony of an experienced law enforcement officer may be used to establish an accused's intent to deliver. *Id.* The factors to be considered in determining whether a defendant possessed contraband with an intent to deliver include the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia, whether the defendant possessed a large amount of cash, and the defendant's status as a drug user. *Kibble v. State*, 340 S.W.3d 14, 18–19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Moreno*, 195 S.W.3d at 325; *see Guttery v. State*, No. 11-12-00160-CR, 2014 WL 3398144, at *3 (Tex. App.—Eastland July 10, 2014, pet. ref'd) (mem. op., not designated for publication). This list of factors is not exclusive, nor must they all be present to establish a defendant's intent to deliver. *Kibble*, 340 S.W.3d at 19.

We find that the evidence permitted a rational jury to determine that Appellant had the intent to deliver the methamphetamine that she possessed. In the bedroom where Appellant was located, police found a gallon ziplock bag with methamphetamine residue inside. Investigator Gover opined that the presence of this bag near Appellant indicated that, at one time, she possessed a larger amount of methamphetamine and that she was distributing, rather than simply using, the drug. Further, during the execution of the search warrant, scales and packaging were in plain view throughout the house on Eighth Street. Investigator Gover opined that this was inconsistent with a house that had innocent parties residing there.

We sustain Appellant's second issue as it relates to her challenge to the sufficiency of the evidence supporting her conviction in Cause No. 11-15-00278-CR. However, because we find that the evidence is sufficient to support the lesser included offense of possession with intent to deliver methamphetamine in an amount

between one and four grams in a drug-free zone, we remand that cause to the trial court to reform the judgment and to conduct a new trial as to punishment only.

*Ineffective Assistance of Counsel*

In Appellant's third issue, she asserts that her trial counsel was ineffective. In order to establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999). Courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

"[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 428, 500 (Tex. Crim. App. 1996)). Under normal circumstances, the record on direct appeal is generally undeveloped and rarely sufficient to overcome the presumption that trial counsel rendered effective assistance. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel did not have an opportunity to explain his actions, we will not find

13

deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

We note that Appellant did not allege in her motion for new trial that her trial counsel rendered ineffective assistance, and the trial court did not receive any evidence supporting Appellant's ineffective assistance claim. Accordingly, the appellate record does not contain an explanation from trial counsel concerning his actions at trial or his trial strategy.

Appellant alleges four matters for which she contends her trial counsel was ineffective. First, Appellant contends that her trial counsel failed to file a motion for severance asking for separate trials for her charge of engaging in organized criminal activity and her charge for possession with intent to deliver. Because we have already determined that the indictment for organized criminal activity was defective and should have been quashed, we need not address this contention. We further note that many of Appellant's remaining claims of ineffective assistance of counsel stem from the conviction for engaging in organized criminal activity—a conviction that we are vacating.

Appellant next contends that her trial counsel "fail[ed] to mount a defense." Specifically, Appellant contends that her trial counsel was ineffective for failing to give an opening statement, failing to present a "battered woman defense," and failing to suggest to the jury that Appellant would be better served by being sent to rehab than by being sent to jail. These are matters that are inherently a matter of trial strategy, and we may not second guess trial counsel's strategy decisions. *See Vasquez v. State*, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992) ("Just because a competent defense attorney recognizes that a particular defense *might* be available to a particular offense, he or she could also decide it would be inappropriate to propound such a defense in a given case."); *Darkins v. State*, 430 S.W.3d 559, 570

(Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Whether to deliver an opening statement is entirely optional.").

Third, Appellant contends that her trial counsel failed to object to several instances of hearsay, leading questions, and witness speculation. Specifically, Appellant points to four "inflammatory" statements made by Investigator Gover during direct examination, a leading question that the State's attorney asked one of its witnesses concerning the nature of relationships in the drug business, the introduction of testimony concerning several of Sliger's unrelated offenses, and the failure of Appellant's trial counsel to object that the State did not properly qualify an expert in forensic science who identified some of the substances seized in this case as methamphetamine. These are also matters that are inherently a matter of trial strategy. *See Thompson*, 9 S.W.3d at 814 (explaining that, when the record is silent as to why trial counsel failed to make an objection, the presumption that the decision not to object to the admission of evidence was a reasonable one has not been rebutted).

Fourth, Appellant contends that her trial counsel failed to effectively cross-examine the State's witnesses. Appellant contends that her trial counsel was ineffective for failing to question Sliger regarding his relationship with Appellant and his exclusive possession of the drugs found in his pocket. Additionally, Appellant contends that her trial counsel was ineffective for failing to cross-examine several of the State's witnesses regarding the relationship between Appellant and Sliger. In order to show that her trial counsel was ineffective on this basis, Appellant must show what questions should have been asked and what the answers would have been. *See Davis v. State*, 119 S.W.3d 359, 370 (Tex. App.—Waco 2003, pet. ref'd). Appellant states in her brief that her trial counsel should have questioned Sliger further about the nature of his relationship with Appellant and about whether or not he had exclusive possession of the drugs found in his pocket. However, Appellant

has not shown what Sliger would have testified to had he been asked these questions by trial counsel. Further, the record contains no explanation for why Appellant's trial counsel limited his cross-examination to the questions actually asked. *See Thompson*, 9 S.W.3d at 814; *Davis*, 119 S.W.3d at 370. Therefore, Appellant has failed to demonstrate that her trial counsel was ineffective on this basis.

All of Appellant's claims of ineffective assistance of counsel are matters that are inherently matters of trial strategy, and many of them arise from a conviction that we have vacated. The record before us does not demonstrate that trial counsel's representation fell below an objective standard of reasonableness because there has been no inquiry into trial counsel's strategy. *See Thompson*, 9 S.W.3d at 812–13. We overrule Appellant's third issue.

## *This Court's Ruling*

Appellant's judgment of conviction in Cause No. 11-15-00277-CR for engaging in organized criminal activity is vacated, and the indictment is dismissed. Appellant's judgment of conviction in Cause No. 11-15-00278-CR for possession with intent to deliver methamphetamine in an amount between four and 200 grams in a drug-free zone is reversed. We remand this cause to the trial court to reform the judgment to reflect a conviction for the offense of possession with intent to deliver methamphetamine in the amount of one gram or more but less than four grams in a drug-free zone and to conduct a new trial as to punishment only. *See Thornton*, 425 S.W.3d at 300, 307.


October 31, 2017                                          JOHN M. BAILEY

Publish. *See* TEX. R. APP. P. 47.2(b).                  JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.