**Opinion filed April 16, 2020**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-17-00214-CR**

_____

**HECTOR RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 15627**

## MEMORANDUM OPINION

The jury convicted Hector Rodriguez of possession of a controlled substance (cocaine) with intent to deliver and assessed his punishment at confinement for a term of life in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in five issues. We affirm.

*Background Facts*

Texas Department of Public Safety Trooper Phillip McKenzie stopped a brown Toyota pickup on January 9, 2015. He testified that the pickup committed a

traffic violation by pulling out in front of him at an intersection when the pickup had a stop sign. The pickup had an expired temporary license tag. Appellant's wife, Diana Borrego, was the driver, and Appellant was a passenger in the front seat. The couple told Trooper McKenzie that Appellant worked in the oilfield in West Texas and that West Texas was their destination. Trooper McKenzie believed that their story was suspicious because he did not see a hard hat or boots in the pickup. Additionally, Trooper McKenzie determined that both occupants had prior convictions for drug offenses.

Because the pickup was registered to Appellant, Trooper McKenzie asked him for consent to search it. Appellant gave his consent to Trooper McKenzie to search the pickup. Trooper McKenzie first found a "water pipe" or "small bong." He found this pipe on the passenger's side floorboard. Borrego claimed that the pipe belonged to her son. A search of a jacket that belonged to Appellant revealed another pipe that appeared to have methamphetamine residue. Trooper McKenzie also found a small dietary supplement bottle in that jacket. A subsequent search of this bottle revealed the presence of 7.53 grams of cocaine.

After searching Appellant's jacket, Trooper McKenzie searched the console between the driver and passenger seats. There were two "Styrofoam" cups located in the console. Trooper McKenzie pulled the lid off one of the cups, and he observed a "small sandwich bag containing a white powdery substance." It was later determined that this bag contained 12.02 grams of cocaine. Trooper McKenzie arrested Appellant and Borrego after finding the cocaine in the cup. Borrego claimed ownership of the cocaine inside of the pickup. However, she was unable to tell Trooper McKenzie that the cocaine was located inside the cup or how it was packaged when he asked her these questions.

Trooper McKenzie also found a digital scale in the driver's side door, unused Ziploc bags, a grinder with cocaine residue, prescription medications for which

2

neither Appellant nor Borrego had a prescription, a bag of what appeared to be marihuana, and other pipes for using methamphetamine or crack cocaine. Trooper McKenzie testified that the amount of almost twenty grams of cocaine was beyond a "personal use amount." Trooper McKenzie testified that the amount of cocaine that he found would be an amount possessed by someone involved in drug trafficking. He also testified that baggies and digital scales like those found in Appellant's pickup are used in the distribution of drugs.

The State also offered the testimony of Texas Department of Public Safety Special Agent Steve Tuggle. He also confirmed that the amount of cocaine found in the pickup was "more than just a personal use amount." Special Agent Tuggle testified that a grinder and sifter like the one found in the pickup is used for "cutting" drugs for distribution and that baggies and digital scales are also used to package drugs for distribution.

*Sufficiency of the Evidence*

In his third issue, Appellant challenges the sufficiency of the evidence supporting his conviction. He contends that the evidence failed to show that he knowingly possessed cocaine or that he had an intent to distribute it. We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of possession with intent to deliver a controlled substance if he knowingly possesses a drug with the intent to deliver it. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2017). Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2019). To prove unlawful possession of a controlled substance, the State must show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *Hughitt v. State*, 539 S.W.3d 531, 538 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019). The evidence must establish that the accused's connection with the drugs is more than just his fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 405–06; *Hughitt*, 539 S.W.3d at 538.

A person need not have exclusive possession of a controlled substance in order to be guilty of possession—joint possession will suffice. *Hughitt*, 539 S.W.3d at

4

538; *see McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Appellant asserts that the evidence failed to demonstrate that he jointly possessed the cocaine with Borrego. He relies on Borrego's claim during the traffic stop that the cocaine solely belonged to her. Appellant also asserts that Borrego later pleaded guilty to possession of the cocaine. We disagree with Appellant's analysis.

Borrego's guilty plea was not admitted as evidence at trial. Accordingly, we do not consider her guilty plea in our sufficiency analysis because it was not admitted as evidence at trial. *See Winfrey*, 393 S.W.3d at 767 (when conducting a review of the sufficiency of the evidence, we consider all of the evidence offered at trial). Borrego did not testify at trial. The evidence concerning Borrego's claim of the cocaine was presented in two forms: Trooper McKenzie's testimony about Borrego's statements and a recording of the traffic stop that was played for the jury.

As noted previously, Borrego initially claimed ownership of the cocaine that Trooper McKenzie said he found in the pickup. In this regard, Trooper McKenzie arrested Appellant and Borrego after he found the cocaine in the cup. However, Borrego was unable to tell Trooper McKenzie that there was cocaine in a cup or how it was packaged. Instead, it appears that she told Trooper McKenzie about the cocaine that was subsequently found in Appellant's jacket, stating that she placed it in his jacket.

To the extent that Borrego claimed sole ownership of the cocaine found inside the pickup, the jury was free to reject her claim, and we defer to the jury's decision to do so. *See Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Borrego was unable to describe the cocaine in the cup or how it was packaged, which is inconsistent with her claim of sole ownership. Accordingly, there was evidence that supported the jury's rejection of her claim.

Appellant also asserts that the evidence was insufficient to show joint possession of the cocaine. Texas courts have formulated the "affirmative links rule,"

5

which provides that, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts).[1] The affirmative links rule is routinely employed to establish joint possession when the accused is not in exclusive possession of the place where the drugs are found. *Poindexter*, 153 S.W.3d at 406. "This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

Appellant contends that the facts in this case are analogous to those in *Hughitt*. In *Hughitt*, we determined that the evidence was insufficient to establish that one person jointly possessed a controlled substance found in another person's pocket when the other person was located in a different room of a house. 539 S.W.3d at 539. *Hughitt* is distinguishable because Trooper McKenzie found the cocaine in an area that was, at a minimum, jointly possessed by Appellant and Borrego—the

---

[1]Courts have identified the following factors as affirmative links that may establish an accused's knowing possession of a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to, and the accessibility of, the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed narcotics or other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. Many of these same factors have been used by courts to determine if a person possessed a controlled substance with the intent to deliver. *See Hughitt*, 539 S.W.3d at 538–39.

6

interior of Appellant's pickup. This was an enclosed place that was relatively small in size. Appellant was present at the time of the search, and the pickup belonged to Appellant. Furthermore, he was in close proximity to the cocaine, and a portion of it was found in Appellant's jacket—the same jacket that Appellant removed his wallet from in order to give Trooper McKenzie his identification. Drug paraphernalia was also found in the pickup, some of which was in plain view, including a glass pipe on the passenger's side floorboard. Additionally, Appellant claimed ownership of a drug pipe that was found in the same pocket as the cocaine found in his jacket. Viewing the evidence in the light most favorable to the jury's guilty verdict, a rational factfinder could have concluded from these affirmative links that Appellant had knowledge of and control over the cocaine. *See Poindexter*, 153 S.W.3d at 406.

Appellant also asserts that there was insufficient evidence of his intent to distribute or deliver. However, Appellant has not provided any argument in his brief concerning how the evidence was insufficient to show his intent to deliver. Appellant makes a general claim that, if the evidence was sufficient to support his conviction, it was attributable to trial counsel's alleged ineffective assistance of counsel. However, the applicable standard of review for sufficiency of the evidence requires us to review all evidence admitted at trial, even evidence that may have been improperly admitted. *Winfrey*, 393 S.W.3d at 767; *Clayton*, 235 S.W.3d at 778. Accordingly, Appellant's claim of ineffective assistance of counsel has no bearing on the analysis of the sufficiency of the evidence to support his conviction.

"'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . ." HEALTH & SAFETY § 481.002(8) (West Supp. 2019). Intent to deliver may be proved with circumstantial evidence, including evidence that the defendant possessed the contraband. *Hughitt*, 539 S.W.3d at 542 (citing *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd)).

7

"Intent can be inferred from the acts, words, and conduct of the accused." *Moreno*, 195 S.W.3d at 326 (quoting *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). The expert testimony of an experienced law enforcement officer may be used to establish an accused's intent to deliver. *Id.*; *see Hughitt*, 539 S.W.3d at 542. The factors to be considered in determining whether a defendant possessed contraband with an intent to deliver include the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia, whether the defendant possessed a large amount of cash, and the defendant's status as a drug user. *Hughitt*, 539 S.W.3d at 542; *Kibble v. State*, 340 S.W.3d 14, 18–19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Moreno*, 195 S.W.3d at 325. This list of factors is not exclusive, nor must they all be present to establish a defendant's intent to deliver. *Kibble*, 340 S.W.3d at 19.

We find that the evidence permitted a rational jury to determine that Appellant had the intent to deliver the cocaine found inside the pickup. Trooper McKenzie and Special Agent Tuggle both testified that Appellant possessed more than a personal-use amount of cocaine and had items in his pickup that are commonly used to distribute cocaine to others. We overrule Appellant's third issue.

### Ineffective Assistance of Counsel

In his first issue, Appellant alleges ineffective assistance of trial counsel. He devotes approximately one-half of his brief to this issue. He identifies six areas wherein he claims that trial counsel was ineffective. To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability

is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

In this case, Appellant did not file a motion for new trial. Accordingly, trial counsel has not had an opportunity to explain his trial strategy in response to the matters that Appellant contends were deficient. We additionally note that the evidence in this case was overwhelming. Appellant was convicted of possessing a large quantity of cocaine. Some of the cocaine was found in a cup located in the console of Appellant's pickup, and the other portion of the cocaine was found inside Appellant's jacket. Furthermore, Appellant consented to a search of the pickup. Appellant's trial counsel offered a glimpse of his trial strategy during his opening statement when he argued, "Ask yourself this question: Why would someone who knows that there's something bad in a vehicle give consent to search that vehicle?"

Given the state of the evidence against Appellant, it is difficult to fault trial counsel for this strategy.

*Batson Challenge*

Appellant first contends that trial counsel should have made a *Batson* challenge to the State's exercise of peremptory strikes. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *Guzman v. State*, 85 S.W.3d 242, 244 (Tex. Crim. App. 2002). He contends that "all jurors were white, and Appellant was a 'native-born' Hispanic." Appellant supports this contention with a pro se response that he filed to an *Anders* brief filed by his prior appellate counsel.[2] *See Anders v. California*, 386 U.S. 738 (1967). This response is not a part of the appellate record and cannot be considered in support of Appellant's contention.[3] *See Ramirez v. State*, 104 S.W.3d 549, 550–51 nn.8, 9 (Tex. Crim. App. 2003) (In its consideration of an issue on appeal, an appellate court cannot consider information that was not presented to the trial court for consideration.); *see also* TEX. R. APP. P. 34.1 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record.").

Nothing in the record suggests that the State struck members of the jury panel for discriminatory purposes. *See Jackson v. State*, 772 S.W.2d 459, 465 (Tex. App.—Beaumont 1989, no pet.). From the record, it is not possible to draw a reasonable inference of purposeful discrimination, the threshold for making a *Batson* challenge. *See id.* Furthermore, the record contains no evidence as to why trial counsel did not make a *Batson* challenge to the State's use of peremptory strikes. Therefore, we presume that trial counsel's action was reasonably professional and motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex.

[2]Upon receipt of prior counsel's *Anders* brief, we abated the appeal and instructed the trial court to appoint new appellate counsel.

[3]Of the four veniremen referenced in Appellant's response, two of them were successfully challenged for cause, and one appears to have been excused by the trial court. Accordingly, a *Batson* challenge could not have been made concerning these three veniremen. *See Guzman*, 85 S.W.3d at 244.

10

Crim. App. 1994). Moreover, Appellant has failed to show that he was prejudiced by trial counsel's failure to make a *Batson* challenge. *See Batiste v. State*, 888 S.W.2d 9, 14–16 (Tex. Crim. App. 2000) (holding prejudice prong of *Strickland* test applies even when ineffective-assistance claim is premised on failure to make a *Batson* challenge).

*Trial Preparation*

Appellant next contends that trial counsel provided ineffective assistance "by inadequately investigating evidence, which allowed prejudicial, incriminating, and inadmissible hearsay in evidence." He supports this allegation with a citation to a portion of the reporter's record concerning a discussion about the admission of the recording of the traffic stop. However, Appellant has not provided any timestamps from the two-hour-long recording where allegedly prejudicial, incriminating, or inadmissible hearsay evidence was admitted at trial. Accordingly, Appellant has not adequately briefed this complaint for appellate review. *See* Tex. R. App. P. 38.1(g), (i) (the brief must be supported by record references). Furthermore, trial counsel informed the trial court that Appellant wanted the entire recording of the traffic stop played at trial. During closing argument, trial counsel relied on the recording— specifically, Borrego's claims of sole ownership of the cocaine—to argue for acquittal.

Appellant also asserts that he requested trial counsel to subpoena his bank records "to substantiate that his income was legitimate and use tracing to establish a defense to the State's charge that he was a drug dealer." He also asserts that trial counsel failed to investigate alibi witnesses. However, the appellate record does not show that Appellant's bank records contained evidence favorable to Appellant, and it does not show that alibi witnesses were available to testify at trial or what their testimony might have been. The failure to present favorable evidence or call witnesses does not constitute ineffective assistance without a showing that the

11

evidence would have benefited Appellant. *See Rodriguez v. State*, 459 S.W.3d 184, 199 (Tex. App.—Amarillo 2015, pet. ref'd).

Appellant also contends that trial counsel did not adequately prepare for trial based upon trial counsel's fee voucher. However, the fee voucher is not in the appellate record. Instead, Appellant attached it as an exhibit to his brief. An appellate court cannot consider documents attached to a brief as an exhibit or appendix that are not a part of the appellate record. *Viscaino v. State*, 513 S.W.3d 802, 814 (Tex. App.—El Paso 2017, no pet.); *see Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004) (affidavits not before the trial court at the time of its ruling cannot be reviewed on appeal). Appellant also references his "client file," but it is not in the appellate record and, therefore, is not available to support his claim of ineffective assistance of trial counsel. Finally, Appellant relies upon a federal case that is over twenty years old wherein trial counsel was found to be ineffective for failing to adequately investigate a matter prior to trial. Appellant has not cited any authority, and we have found none, that permits a finding of ineffective assistance based on an attorney's previous representation of another client, particularly a representation that occurred over twenty years earlier.

*Trial Conduct*

Appellant asserts that trial counsel should have filed motions to limit the admission of the drug paraphernalia found inside the pickup. However, he does not identify what motions should have been filed, and he does not show that these motions would have been successful had trial counsel filed them. Trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)). To the extent that Appellant is asserting that trial counsel should have filed a motion to suppress, he is required to show that the motion to suppress would have been granted. *Jackson v.*

*State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998). Given the fact that Appellant consented to the search of the pickup, a motion to suppress likely would have been futile. *See State v. Ruiz*, 581 S.W.3d 782, 785–86 (Tex. Crim. App. 2019) ("A warrantless search may be reasonable 'if the police obtain consent.'" (quoting *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002))). Counsel is not required to perform a useless or futile act. *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005) ("But a reasonably competent counsel need not perform a useless or futile act."); *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) ("Counsel is not required to engage in the filing of futile motions."). Additionally, a motion in limine would have been little benefit. *See Wert*, 383 S.W.3d at 753. Furthermore, the drug paraphernalia in the pickup likely would have been admissible as same transaction contextual evidence that was indivisibly connected to the offense. *See Lockhart v. State*, 847 S.W.2d 568, 571 (Tex. Crim. App. 1992); *Mayes v. State*, 816 S.W.2d 79, 86–87 n.4 (Tex. Crim. App. 1991).

Appellant also contends that trial counsel did not attempt to mitigate prejudicial evidence from the recording of the traffic stop, including Appellant's prior criminal record. But as noted previously, Appellant has not sufficiently presented this complaint for appellate review because he has not provided any timestamps from the recording. Furthermore, trial counsel has not had an opportunity to respond to Appellant's allegations.

Appellant also summarily alleges that trial counsel did not object to leading questions, failed to object to compound questions and questions calling for a narrative, failed to object to duplicative evidence or prejudicial evidence, and failed to object to expert testimony. Appellant makes these complaints on a single page of his brief without any supporting authority or any argument that these objections would have been sustained. To show ineffective assistance of counsel for a failure to object at trial, an appellant must show that the trial court would have committed

error in overruling the objection. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). Appellant has not made this showing. Furthermore, the record is silent as to why trial counsel did not make these objections, and we may not speculate as to why he did not object. *See Wert*, 383 S.W.3d at 757.

*Expert Witness Testimony*

Appellant contends that trial counsel was ineffective for failing to object to expert witness testimony from Special Agent Tuggle. Appellant bases this argument on the contention that the State failed to designate Special Agent Tuggle in compliance with the trial court's "Standing Order in All Criminal Cases." However, Appellant's trial counsel objected to Special Agent Tuggle's testimony on the basis that he had not been disclosed by the State. Accordingly, we disagree with Appellant's contention that trial counsel failed to object to Special Agent Tuggle's testimony on the basis that he was not disclosed under the standing order.

Appellant also contends that trial counsel should have objected to Trooper McKenzie's testimony identifying two of the prescription medications that he found in the pickup. He contends that Trooper McKenzie was not qualified to offer this testimony. However, Appellant does not cite any authority for this proposition. Even if we assume that Trooper McKenzie was not qualified to give this testimony, the record does not demonstrate that the outcome of the proceeding would have been different. Appellant was not convicted of possessing these medications. Additionally, trial counsel established on cross-examination that Trooper McKenzie did not have personal knowledge of these medications but, rather, obtained the information by doing research about them later.

*Closing Argument*

Appellant contends that trial counsel was ineffective for failing to object to the following matters that the prosecutor referenced during closing arguments at the guilt/innocence phase: (1) a reference to Appellant's prior drug conviction and (2) a

14

reference that Appellant was "just a user who had an addiction."[4] In order to establish ineffective assistance of counsel in this manner, the record must show that the trial court would have committed harmful error in overruling objections to these arguments. Thus, Appellant's complaint requires an inquiry as to whether the prosecutor made improper jury arguments.

Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). The prosecutor's argument about Appellant's prior drug conviction constituted a summation of the evidence because the prior conviction was referenced in the recording of the traffic stop. With respect to the argument that Appellant was more than just a drug user, the prosecutor's argument constituted a reasonable deduction from the evidence. In addition to the presence of cocaine in Appellant's pickup, there were also pipes that showed evidence of drug usage. Also, there were items in the pickup that showed evidence of distribution. *See Adair v. State*, 336 S.W.3d 680, 695 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Akin v. State*, 981 S.W.2d 297, 300 (Tex. App.—Texarkana 1998, no pet.); *Davis v. State*, 830 S.W.2d 762, 766 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). Accordingly, we conclude that trial counsel was not ineffective for not objecting to the matters that Appellant cites.

*Posttrial Guidance*

Finally, Appellant contends that trial counsel was ineffective for not advising him of his posttrial rights. He argues that trial counsel did not inform him of "all

---

[4]The prosecutor actually argued that Appellant and Borrego were more than "just users who have an addiction."

aspects of an appeal, or any alternative, such as a motion for new trial." The appellate record does not demonstrate that trial counsel did not advise Appellant about his posttrial rights. Appellant attempts to overcome this deficiency by asserting that Appellant was confused about the effect of pleading "true" to the prior criminal offenses alleged for enhancement purposes. However, this confusion is not necessarily attributable to trial counsel's representation, and it has nothing to do with Appellant's posttrial rights to file a motion for new trial.

The trial court imposed the sentence on August 9, 2017. Appellant filed his notice of appeal on August 15, 2017, and the trial court appointed appellate counsel for him two days later. Appellate counsel filed a document accepting the appointment on August 21, 2017. Appellant contends that appellate counsel did not have sufficient time to review the record before the thirty-day deadline for filing a motion for new trial. *See* Tex. R. App. P. 21.4(a). We disagree.

There is a rebuttable presumption that, when the defendant is represented by counsel during trial, this counsel continued to adequately represent the defendant after trial. *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007) (citing *Oldham v. State*, 977 S.W.2d 354, 360–63 (Tex. Crim. App. 1998)). Furthermore, there is a rebuttable presumption that the defendant was adequately represented by appellate counsel during the period of time that a motion for new trial could have been filed. *Id.* There is nothing in the appellate record that rebuts these presumptions. Appellant was represented by counsel for at least twenty-six of the thirty days following the date sentence was imposed. Furthermore, this court notes that the reporter's record is often not available for review prior to the deadline for filing a motion for new trial.[5]

---

[5]The reporter's record was filed in this cause approximately two months after the date sentence was imposed.

16

The appellate record does not establish ineffective assistance of counsel under *Strickland*. We overrule Appellant's first issue alleging ineffective assistance of trial counsel.

*State's Disclosure of Expert Witnesses*

In his second issue, Appellant asserts that "the State of Texas violated Appellant's rights" under various statutory and constitutional provisions. We note at the outset that, "[o]rdinarily, a conviction is not overturned unless the trial court makes a mistake." *Johnson v. State*, 169 S.W.3d 223, 228–29 (Tex. Crim. App. 2005). Thus, most appellate issues are directed at the conduct of the trial court rather than opposing counsel. In some limited situations, misconduct by the prosecutor can be grounds for overturning a conviction even though the trial court has done nothing wrong. *Id.* at 229 (listing the following examples: if perjured testimony is knowingly used, exculpatory evidence is suppressed, or the prosecutor has a conflict of interest requiring recusal).

Appellant cites various statutory and constitutional provisions that he alleges the prosecutor violated. For example, he contends that the prosecutor violated the requirement of Article 2.01 "to see that justice is done." *See* TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005). He also cites Article 39.14 and provisions of the Texas Disciplinary Rules of Professional Conduct concerning a prosecutor's duty to turn over evidence favorable to the defendant. *See* CRIM. PROC. art. 39.14 (West Supp. 2019); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). However, Appellant does not assert that the prosecutor failed to provide exculpatory information to the defense. Instead, he contends that the prosecutor "lied" when responding to trial counsel's objection that Special Agent Tuggle had not been disclosed prior to trial. The alleged "lie" was that the State was not required to provide notice of its witnesses.

17

We will construe Appellant's second issue as a challenge to the trial court's ruling based upon the State's argument. We review a trial court's decision to allow an undesignated expert to testify for an abuse of discretion. *See Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992); *Branum v. State*, 535 S.W.3d 217, 226 (Tex. App.—Fort Worth 2017, no pet.). In determining whether an abuse of discretion occurred, we consider whether there is any showing of bad faith on the part of the prosecutor in failing to provide the name of the witness and whether the defendant could have reasonably anticipated that an expert of the type called by the State would testify. *See Branum*, 535 S.W.3d at 226; *Gowin v. State*, 760 S.W.2d 672, 674 (Tex. App.—Tyler 1988, no pet.). In determining whether the defense could have reasonably anticipated that the State would call the witness, we examine the degree of surprise to the defense, the degree of disadvantage inherent in that surprise, and the degree to which the trial court was able to remedy that surprise. *Hamann v. State*, 428 S.W.3d 221, 228 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

Appellant bases his second issue on the contention that the State failed to designate Special Agent Tuggle in compliance with the trial court's "Standing Order in All Criminal Cases." The standing order contained the following provision:

> In all criminal cases now or hereafter pending in this Court, each party, State and Defendant, by and through its attorney is hereby ordered to produce and make available to the other party, **without the necessity of the filing of a motion**, the disclosure notice required by article 39.14(b) of the Texas Code of Criminal Procedure by disclosing in writing the name(s) and address(es) of each person the party may use to present evidence under Rules 702, 703 and 705 of the Texas Rules of Evidence upon the trial of this cause and such notice shall be provided no later than twenty (20) days before the date the trial begins herein unless waived by the other party.

When Appellant's trial counsel objected to Special Agent Tuggle's expert testimony on the basis that he had not been disclosed, the prosecutor responded: "[Trial

counsel] filed no motions, so we didn't have to produce a witness list." Appellant is essentially asserting that the prosecutor misinterpreted the provisions of the standing order. He partially bases this argument on the fact that the prosecutor's predecessor filed a witness designation for another expert witness, the chemist.

To the extent that the trial court's ruling required a construction of its own discovery order, we defer to the trial court's construction. The trial court focused on the lack of surprise to the defense that the State would call an expert to testify that the amount of drugs found, along with the drug paraphernalia present in the pickup, evidenced an intent to deliver. Specifically, the trial court noted that expert testimony of this type from a law enforcement officer is "pretty commonplace" and "happens all the time." The trial court also noted that Special Agent Tuggle's testimony was going to be consistent with Trooper McKenzie's prior testimony.

Whether the defense could have reasonably anticipated the expert testimony of the type elicited by the State is an element in determining if the trial court abused its discretion by permitting the expert to testify. *See Branum*, 535 S.W.3d at 226. We conclude that the trial court did not abuse its discretion by permitting Special Agent Tuggle to testify. Additionally, Appellant did not request a continuance based on the lack of designation, thereby rendering any error harmless. *See Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994); *Branum*, 535 S.W.3d at 226. We overrule Appellant's second issue.

In his fourth issue, Appellant makes a similar challenge to the one set out in his second issue concerning the prosecutor's lack of designation of expert witnesses. Appellant expands his fourth issue to also include the expert testimony of Trooper McKenzie and the testimony of Investigator Randy Johnson of the Palo Pinto County Sheriff's Office, a fingerprint expert that the prosecutor used during the punishment phase to prove up Appellant's prior convictions. Appellant only objected to the expert testimony of Special Agent Tuggle. Accordingly, any

19

complaint concerning expert testimony from Trooper McKenzie and Investigator Johnson was not preserved for appellate review. *See* TEX. R. APP. P. 33.1. We have previously determined that the trial court did not abuse its discretion in overruling Appellant's objection that Special Agent Tuggle was not designated as an expert witness.[6] We overrule Appellant's fourth issue.

*Closing Argument*

Appellant states his fifth issue as follows: "The State violated Appellant's rights by introducing evidence, not on the record, and without notice." However, Appellant is not complaining about any evidence offered at trial. Instead, Appellant is asserting that the prosecutor made improper jury arguments. He contends that the prosecutor "painted Appellant to be a liar, a drug dealer, and encouraged the jury to impermissibly evaluate Appellant's honesty even though Appellant never testified." Appellant also asserts that the prosecutor impermissibly encouraged the jury to evaluate Borrego's credibility.

We first note that Appellant did not preserve these complaints for appellate review. Generally, to preserve error for an improper jury argument, a defendant should (1) contemporaneously object to the statement, (2) request an instruction that the jury disregard the statement if the objection is sustained, and (3) move for a mistrial if the request for an instruction is granted. *Cooks v. State*, 844 S.W.2d 697, 727–28 (Tex. Crim. App. 1992). Thus, Appellant was required to object and proceed to an adverse ruling to preserve these issues for review on appeal. *Id.*; *see also Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that the right

---

[6]As noted above, the trial court determined that the defense should have reasonably anticipated that the State would call an expert to establish that Appellant engaged in possession with an intent to deliver. The same rationale would extend to Trooper McKenzie's expert testimony on the same matter. Also, after Appellant pleaded "not true" to the two prior felony convictions alleged for enhancement purposes, it would appear that the defense would have reasonably anticipated that the State would call a fingerprint expert to prove up the prior convictions.

to be free from incurable jury arguments may be waived by a "failure to insist upon it"). Appellant's trial counsel did not object to the allegedly improper remarks that his counsel on appeal is now challenging. Because Appellant did not object at trial to any of the arguments that he claims were improper, he has not preserved his fifth issue for appellate review. *See* TEX. R. APP. P. 33.1(a); *Cockrell*, 933 S.W.2d at 89; *Cooks*, 844 S.W.2d at 727–28.

Moreover, we do not find that the prosecutor presented improper closing arguments. We have previously set out the areas of permissible jury argument. *See Brown*, 270 S.W.3d at 570; *Cannady*, 11 S.W.3d at 213. Even when an argument exceeds the permissible bounds of these approved areas, it is not reversible unless the argument is extreme or manifestly improper, violates a mandatory statute, or injects into the trial new facts harmful to the accused. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). We must "review the argument in the context of the entire argument and not in isolation." *Sennett v. State*, 406 S.W.3d 661, 670 (Tex. App.—Eastland 2013, no pet.).

We have determined that the prosecutor's argument that Appellant was more than just a drug user was a reasonable deduction from the evidence. The argument challenging Appellant's and Borrego's credibility was also a reasonable deduction from the evidence. While neither Appellant nor Borrego testified as actual trial witnesses, their statements at the time of the traffic stop were admitted at trial because the two-hour recording of the traffic stop was admitted into evidence and published to the jury. In his closing argument, Appellant's trial counsel relied on both Borrego's claim of sole ownership of the cocaine and Appellant's denial of ownership. Thus, the prosecutor's subsequent argument challenging the credibility of Appellant and Borrego was also an answer to the argument of opposing counsel.

21

*See Brown*, 270 S.W.3d at 570; *Cannady*, 11 S.W.3d at 213. Finally, the jury is the sole judge of the witnesses' credibility. *Brooks*, 323 S.W.3d at 899. Accordingly, an argument that asks the jury to evaluate the witnesses' credibility is not improper. We overrule Appellant's fifth issue.

### This Court's Ruling

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


April 16, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[7]

Willson, J., not participating.

---

[7]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.