**Opinion filed March 4, 2021**



In The

# Eleventh Court of Appeals

———————————

## Nos. 11-19-00078-CR & 11-19-00079-CR

———————————

## MICHAEL ANTHONY FOUX, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause Nos. 25177 & 25178**

## M E M O R A N D U M   O P I N I O N

Appellant, Michael Anthony Foux, was twice indicted for the state jail felony offense of knowingly possessing a controlled substance, namely, methamphetamine. The offenses were consolidated for trial. The jury convicted Appellant of both offenses and assessed his punishment for each offense at two years' confinement in the State Jail Division of the Texas Department of Criminal Justice and a $10,000 fine. The trial court sentenced Appellant accordingly and ordered the sentences to

run concurrently. In a single issue, Appellant challenges the sufficiency of the evidence to support his convictions. Specifically, Appellant asserts that, with each conviction, the evidence is insufficient to prove that he intentionally or knowingly possessed the methamphetamine. We affirm.

I. *Factual Background*

A. *First Arrest: July 19, 2018 – No. 11-19-00078-CR*

On July 19, 2018, at 3:50 a.m., Sergeant Leslie Glen Trammel of the Cisco Police Department observed a suspicious vehicle in an area where several recent burglaries had occurred. Sergeant Trammel followed this vehicle and noticed that the driver was operating it in an undecisive manner. Based on his observation, Sergeant Trammel concluded that the driver was not familiar with the area. The vehicle eventually stopped in front of a home that Sergeant Trammel knew to be the residence of a police department secretary and that had recently been burglarized. After the driver exited the vehicle, Sergeant Trammel activated his vehicle's emergency lights and instructed the driver to return to the parked vehicle and to get back inside. The driver complied.

Sergeant Trammel approached the parked vehicle and immediately detected the smell of marihuana. At the time, Appellant was seated in the front passenger seat of the vehicle. When Sergeant Trammel asked about the odor of marihuana, the driver explained that several of his friends had smoked marihuana in the vehicle a few hours earlier. Sergeant Trammel saw a gold container on the floorboard between Appellant and the driver, and he inquired about it. The driver retrieved and opened the container. Sergeant Trammel noticed a "white crystal substance" in the container, which he believed was methamphetamine. The driver stated that the contents of the gold container belonged to him. Sergeant Trammel noticed that the driver and Appellant were both "sweating profusely," which he testified was indicative of recent methamphetamine use. After another officer had handcuffed

2

Appellant, Sergeant Trammel asked Appellant why he and the driver were in this neighborhood. While they were speaking, Appellant's cell phone began to ring, and Appellant allowed Sergeant Trammel to answer the phone so that Appellant could speak to the caller. Sergeant Trammel put the call on speakerphone. Appellant then informed the caller that he was being detained by law enforcement and told the caller to "be careful what you say." Sergeant Trammel thereafter promptly ended the call.

Sergeant Trammel performed a field test on the white crystal substance that was retrieved from the gold container. The test indicated a positive result for methamphetamine. While searching the vehicle, Sergeant Trammel discovered a torch lighter, a used straw cut in a manner consistent with smoking methamphetamine, and a partially smoked marihuana cigarette.

Sergeant Trammel also searched Appellant's person and, inside the pocket of Appellant's jeans, discovered a folded piece of paper containing visible crystals. When Sergeant Trammel informed Appellant that the paper had crystals in it, Appellant stated that that was impossible. Sergeant Trammel responded, "Well, this came out of your pocket," to which Appellant acknowledged, "I know." Appellant stated that he had been wearing those jeans for two days and that he wore them whenever he went out. Sergeant Trammel conducted a field test on the piece of paper found in Appellant's jeans pocket. The result of this test was positive for methamphetamine. Because Appellant adamantly asserted that the paper could not have tested positive, Sergeant Trammel performed a second field test, which also returned a positive result. Appellant then claimed that the jeans belonged to the driver, which the driver denied. According to Sergeant Trammel, the size of the jeans appeared to be too small for the driver but appeared to be a size that would fit Appellant.

At the time, Appellant was on parole for previous offenses and claimed that he had recently tested negative for drug use. However, his parole officer, Farah

Shelton, testified that Appellant had not "tested negative" on a drug test for the use of methamphetamine and that Appellant was being untruthful if he made that statement.

Sergeant Trammel further testified that he believed Appellant was under the influence of methamphetamine at the time of the arrest because he observed that Appellant had "meth mouth"—a form of jaw biting associated with methamphetamine use—and small pupils and was sweating profusely, all of which are classic signs of a person's recent methamphetamine use.

Jonathan Bishop, a forensic chemist, analyzed both the gold container and the folded piece of paper found in the jeans worn by Appellant. Bishop testified that the container and the folded piece of paper each contained methamphetamine residue, although the tested samples were too small to accurately weigh or measure.

*B. Second Arrest: August 18, 2018 – No. 11-19-00079-CR*

One month later, Appellant was stopped for a traffic violation by Sergeant Scott McDade, a narcotics dog handler for the Eastland Police Department. Sergeant McDade testified that he observed a vehicle weave through and cross various traffic boundaries without a signal of intent to change lanes. He also noticed that the vehicle was slowly looping around the McDonald's restaurant as if the driver was trying to "get rid" of, "ditch," or "hide" something. Sergeant McDade suspected that the driver of the vehicle was intoxicated; therefore, he initiated a traffic stop. Appellant was identified as the driver of the vehicle. When Sergeant McDade inquired about Appellant's July 19 arrest, Appellant mentioned that Cisco police officers had found "something" in a gold container and also found "something" in a "rubber thing or something." Sergeant McDade testified that, based on his training, his experience, and his observations of Appellant, he believed that Appellant was under the influence of methamphetamine. Sergeant McDade thereafter deployed the

4

canine from his patrol unit; the canine alerted on the driver's side of the vehicle that Appellant had been driving.

Upon searching the vehicle, Sergeant McDade discovered a "meth pipe" that contained residue and a torch lighter under some clothes in the driver's seat. He also discovered a broken piece of a "meth pipe," which contained residue, in the ashtray. Sergeant McDade also noticed that Appellant had "track marks" on his arms, which, according to Sergeant McDade, indicated that Appellant had recently used methamphetamine.

Sergeant McDade also testified that the passenger of the vehicle Appellant was driving said that, as the vehicle was being stopped, Appellant tried to hide a digital scale in the vehicle. Sergeant McDade located the scale behind the seat, along with several empty baggies. He testified that, in his experience, these items were typically used in drug dealing.

The two pipes removed from the vehicle driven by Appellant were analyzed by Christina Coucke-Garza, another forensic chemist. Although the two pipes tested positive for methamphetamine residue, like the other tested samples from Appellant's July 19 arrest, these samples were too small to accurately weigh or measure.

Officer Justin Harris of the Eastland Police Department was Sergeant McDade's backup during this encounter with Appellant. Officer Harris transported Appellant to jail after he was arrested. Officer Harris testified that Appellant voluntarily stated that he "gets high all the time" and that he had "gotten rid of his meth that night." Officer Harris also testified that the passenger, in Appellant's presence, stated that Appellant had placed the digital scale behind the seat of the vehicle.

## II. *Standard of Review – Sufficiency of the Evidence*

In his sole issue, Appellant contends that the evidence is insufficient to show that he knowingly possessed a controlled substance in either instance.[1]

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial and defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v.*

---

[1]In his brief, Appellant asserts that, because the driver claimed the gold container belonged to him, Appellant was not charged in connection with the methamphetamine residue found in the gold container. It is not necessary for us to address the accuracy of that assertion because, in this appeal, Appellant contests only the *mens rea* of his convicted offense, not his possession of a controlled substance. The residue discovered in the gold container constitutes, at a minimum, circumstantial evidence that the jury could consider in evaluating Appellant's knowledge that the substance in the vehicle was methamphetamine. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

*State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances may be sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

### III. *Analysis*

To prove unlawful possession of a controlled substance, the State must show beyond a reasonable doubt that (1) the defendant exercised actual control, management, or care over the substance and (2) the defendant knew the substance in his possession was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Hughitt v. State*, 539 S.W.3d 531, 538 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019). To be convicted of this offense, there is no requirement that the defendant must possess a usable amount of a controlled substance. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2020),

§ 481.115(a) (West 2019). Instead, the Texas Court of Criminal Appeals has held that, "when the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (quoting *Shults v. State*, 575 S.W.2d 29, 30 (Tex. Crim. App. 1979)); *see also Joseph*, 897 S.W.2d at 376. After thoroughly reviewing the record, we find that the record contains sufficient evidence to support both convictions.

With Appellant's July 19 arrest, the record is replete with "other evidence" that indicated that Appellant knowingly possessed methamphetamine. Sergeant Trammel testified that Appellant appeared to be under the influence of methamphetamine. Sergeant Trammel noticed that Appellant was "sweating profusely," that he had "meth mouth," and that his pupils were small. Appellant was seated near the area in the vehicle where the drug paraphernalia (a torch lighter and a used straw that was cut in a manner consistent with smoking methamphetamine) was found; thus, these items were within his reach and were accessible to him. Furthermore, visible crystals were noticeable and present in both the gold container and the folded piece of paper removed from Appellant's jeans pocket. Both items tested positive for the presence of methamphetamine based on the results of Sergeant Trammel's field tests and the tests conducted by the forensic chemist.

Appellant's statements are also indicative of his knowledge that he was in possession of a controlled substance. Appellant falsely claimed to have recently tested negative in a series of parole-mandated drug tests. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (holding defendant's false and inconsistent statements and implausible explanations were indicative of his complicity in the murder of his wife); *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (concluding that defendant's false statements made after murder indicated a

"consciousness of guilt and an attempt to cover up the crime"); *see also Ates v. State*, 21 S.W.3d 384, 390–91 (Tex. App.—Tyler 2000, no pet.) (appellate court considered false statements made by defendant in considering sufficiency of the evidence). Appellant stated to an unknown person during a received cell phone call, in Sergeant Trammel's presence, to "be careful what you say." Appellant initially claimed ownership of the jeans in which the folded piece of paper was discovered but, later, maintained that the jeans belonged to the driver; however, the driver denied that the jeans were his. Furthermore, when Sergeant Trammel removed the folded piece of paper from Appellant's jeans pocket, Appellant stated, "I know," suggesting his acknowledgement of Sergeant Trammel's discovery of the piece of paper that had methamphetamine residue on it.

We have reviewed all of the evidence in the light most favorable to the jury's verdict. Here, we hold that, in addition to the crystals and residue of methamphetamine discovered on Appellant's person or near him during his detention and subsequent arrest on July 19, the record before us contains sufficient and ample "other evidence" from which a rational jury could have found beyond a reasonable doubt that Appellant knowingly possessed a controlled substance on July 19 as charged in the indictment. *See King*, 895 S.W.2d at 703–04 (cocaine was visible inside crack pipe but unmeasurable, pipe was damp with saliva, and defendant displayed evidence of intoxication); *Ferguson v. State*, 313 S.W.3d 419, 429 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (drugs were discovered in defendant's car conveniently accessible to him, defendant's conduct indicated consciousness of guilt, and defendant was under influence of cocaine at time of arrest); *Muckleroy v. State*, 206 S.W.3d 746, 749 (Tex. App.—Texarkana 2006, pet. ref'd) (methamphetamine and pipe found in defendant's vehicle within his reach, and defendant's statements indicated knowledge that the substance was methamphetamine).

Similar to Appellant's July 19 arrest, there is sufficient "other evidence" that Appellant knowingly possessed methamphetamine on August 18. Sergeant McDade testified that Appellant delayed pulling the vehicle over for the traffic stop in a manner that suggested he was trying to conceal or discard contraband. According to Officer Harris, Appellant stated that he had "gotten rid of his meth that night" and that he "gets high all the time." Appellant also mentioned certain details about his July 19 arrest and specifically mentioned that law enforcement had discovered "something" in a gold container during the search of the vehicle.

During the August 18 traffic stop, Sergeant McDade discovered drug paraphernalia, including two meth pipes and a torch lighter, near Appellant in the vehicle. A digital scale was also recovered, an item which, according to Appellant's passenger, Appellant had tried to conceal before pulling over for the traffic stop. Sergeant McDade testified that, based on his training and experience, it was his opinion that the digital scale and empty baggies he found were indicators that Appellant was engaged in drug dealing. Additionally, Appellant had "track marks" on his arms that, according to Sergeant McDade, were consistent with Appellant's recent methamphetamine use.

Again, we have reviewed all of the evidence in the light most favorable to the jury's verdict. In light of Appellant's statements and admissions, the drug paraphernalia discovered by Sergeant McDade in Appellant's vehicle, and Appellant's physical appearance, which suggested that he had recently used or was currently under the influence of methamphetamine at the time of the August 18 traffic stop, we hold that the record before us contains sufficient and ample "other evidence" from which a rational jury could have found beyond a reasonable doubt that Appellant knowingly possessed a controlled substance on August 18 as charged in the indictment.

Accordingly, because sufficient evidence supports Appellant's convictions for both charged offenses, we overrule Appellant's sole issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgments of the trial court.


W. STACY TROTTER

JUSTICE


March 4, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Trotter, J.,
Williams, J., and Wright, S.C.J.[2]

Bailey, C.J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.