Opinion filed July 7, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00057-CR
_____

### ROSA LINNEA REDMAN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 10958**

## M E M O R A N D U M   O P I N I O N

Appellant, Rosa Linnea Redman, was indicted for the offense of possession of a controlled substance, a third-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (West Supp. 2022). The jury convicted Appellant of the indicted offense and assessed her punishment at five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced

Appellant accordingly. On appeal, Appellant raises a single issue: the evidence is insufficient to prove that she intentionally or knowingly possessed methamphetamine. We modify and affirm the trial court's judgment.

## I. *Factual and Procedural Background*

On June 20, 2021, Officer Steven Roach of the Snyder Police Department initiated a traffic stop of a black SUV for speeding. Officer Roach approached the driver—later identified as Appellant—and noticed a small black container affixed to the roof of the vehicle. Officer Roach asked Appellant about the contents of the container; Appellant denied being aware of it and stated that she thought the container was a "plant" or a tracking device. Officer Roach returned to his vehicle with the container, searched it and found methamphetamine inside. At this point, Officer Roach searched Appellant's vehicle and found a "kit" inside a bag on the passenger seat. The kit included a pipe that contained methamphetamine residue. Officer Roach then arrested Appellant for possession of a controlled substance.

At trial, the State presented three witnesses, Officer Roach's body camera footage, the drug paraphernalia recovered during the search of Appellant's vehicle, and the forensic lab report results verifying that the substance recovered from Appellant's vehicle was methamphetamine and its measured amount.

Officer Roach was the State's primary witness and he testified about his interactions with Appellant during the traffic stop and the search of Appellant's vehicle. According to Officer Roach, Appellant seemed "kind of scattered" during the traffic stop and she exhibited nervous behaviors—picking at her mouth and avoiding eye contact, eyelid tremors (which he testified is a potential side effect of methamphetamine use), frequently closing her eyes, shallow breathing, and shaking. When Officer Roach asked Appellant why she was speeding, Appellant responded that she "just needed to go fast for a bit."

Officer Roach testified that he was checking the vehicle identification number (VIN) when he saw a container on top of Appellant's vehicle, next to the rails, that appeared to be affixed to the top of the vehicle by a magnet. Officer Roach testified that when he showed Appellant the container, Appellant had a "knee-jerk" reaction that indicated to him that Appellant recognized the container. Appellant then proceeded to tell Officer Roach that she believed that the container was "maybe a tracking device" or "maybe a plant" and that she was afraid of the container. At that point, based on Appellant's demeanor and the other circumstances surrounding the discovery of the container, Officer Roach believed that he knew what was inside the container; he then told Appellant that he intended to open the container. When Officer Roach opened the container, he found methamphetamine inside.

After he identified that the substance inside the container was methamphetamine, Officer Roach proceeded to search Appellant's vehicle. Officer Roach testified that he found a "kit" at the top of a bag located on the front passenger seat. Officer Roach explained that a "kit" is a collection of items that people use to inject drugs and that the particular kit that he found in Appellant's vehicle was for methamphetamine use. Officer Roach found a pipe in the kit and noticed a significant amount of residue in the bowl of the pipe. In addition to the kit, Officer Roach also found the following during his search of Appellant's vehicle: Loctite packaging, an adhesive; a torch lighter, which he testified is often found with drug paraphernalia to heat the drugs and create the vapor that is inhaled; and a Steelie car mount package, a phone mount typically used to mount phones inside a vehicle that matched the magnet used on the container that Officer Roach found attached to the roof of Appellant's vehicle.

Officer Roach's body camera footage shows that he questioned Appellant about the container he found on the roof of Appellant's vehicle. During this

questioning, Appellant told Officer Roach that she had not used drugs for at least two years. Appellant also told Officer Roach the type of drugs that she had used in the past and what had been her drug of choice: first, opioids, with methamphetamine as a "close second." Further, when Officer Roach began searching Appellant's vehicle, he found the kit in a black and white patterned bag. Officer Roach also removed baby toys and baby clothes from the patterned bag.

Bethany Schroeder, a forensic scientist with the Texas Department of Public Safety, analyzed the contents of the container and the "kit" that were recovered from Appellant's vehicle. The results of Schroeder's forensic testing confirmed that the substances found in the container and the "kit" were methamphetamine; the aggregate weight of the tested substances was 1.37 grams and 0.52 grams, respectively.

Appellant testified that when Officer Roach found the container on the roof of her vehicle and handed it to her, that was the first time she had seen it. Regarding Officer Roach's testimony about her behavior during the traffic stop, Appellant testified that she was looking directly into the sun as she spoke with Officer Roach and that is why her eyelids twitched and she repeatedly closed her eyes. Appellant also testified that she had "[a] lot of personal stuff that [she] did not feel [she] should even open up and vent to a peace officer" that caused her to behave in a nervous manner. Specifically, Appellant described a fight with her ex-husband that had occurred the morning before the traffic stop.

Appellant also testified about the four items that Officer Roach found during his search of her vehicle. First, regarding the kit, Appellant claimed that the bag found on her front seat, inside of which Officer Roach found the kit, was not her bag. According to Appellant, she found the bag inside her ex-husband's vehicle that morning and, believing that it belonged to the woman responsible for her separation

4

from her ex-husband, she took the bag. Appellant testified that she saw the black bag that Officer Roach identified as the kit at the top of the bag but believed it to be her ex-husband's shaving bag. Second, regarding the Steelie package, Appellant introduced a car mount into evidence. Appellant testified that it was the car mount from the Steelie box that Officer Roach found in her vehicle, and that she keeps the car mount in her vehicle on the dash. Third, regarding the Loctite package, Appellant testified that when she finds trash near her vehicle she will pick it up and place it inside her vehicle and that is likely where the Loctite package came from. Finally, as for the torch lighter, Appellant testified that she uses the torch lighter to burn her trash.

## II. *Standard of Review*

In her sole issue, Appellant contends that the evidence is legally insufficient to support her conviction. Specifically, Appellant contends that the evidence cannot support her conviction for possession of a controlled substance as charged because (1) the container holding the methamphetamine was attached to the exterior of her vehicle and was, thus, accessible to anyone, and (2) the kit containing the pipe with methamphetamine residue was located inside a bag that did not belong to Appellant and that she had removed it from her ex-husband's vehicle the morning of the traffic stop.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the

5

charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*,

6

214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

III. *Analysis*

A. *Sufficiency of the Evidence*

A person commits the offense of possession of a controlled substance if she intentionally or knowingly possesses a controlled substance in the applicable penalty group without a valid prescription. *See* HEALTH & SAFETY § 481.115(a), (c). Possession is defined as "actual care, custody, control, or management." *Id.* at § 481.002(38); TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2021). Therefore, to prove unlawful possession of a controlled substance, the State must show beyond a reasonable doubt that (1) the defendant exercised actual care, custody, control, or management over the substance and (2) the defendant knew the substance in her possession was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Hughitt v. State*, 539 S.W.3d 531, 538 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019).

Texas courts have formulated the "affirmative links rule," which provides that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d

158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts); *see also Tate*, 500 S.W.3d at 413–14 (citing *Evans*, 202 S.W.3d at 162 n.12). The affirmative links rule is routinely employed to establish possession when the accused is not in exclusive possession of the place where the drugs are found; it is designed "to protect the innocent bystander from conviction based solely upon [her] fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406. "This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

The following links have been applied to infer knowledge that relate to the possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12). It is not the number of identified links that is dispositive; rather, it is the logical force of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162. Here, many of the above links are present and weigh in favor of an inference that Appellant had knowledge that she possessed the methamphetamine.

First, regarding the container where the methamphetamine was found, Officer Roach found the container in plain view. While the container was located on the roof of Appellant's vehicle, the jury could have reasonably concluded that it was accessible to and within Appellant's reach because it was on the driver's side of the vehicle. During the search of Appellant's vehicle, Officer Roach also found other contraband—the "kit" with a pipe that had methamphetamine residue; items that connected Appellant to drug paraphernalia—the torch lighter; and items that connected Appellant to the container—the Steelie packaging (with a magnet that matched the magnet found on the container) and the Loctite packaging (adhesive). Officer Roach also testified that Appellant seemed "kind of scattered" during the traffic stop and exhibited nervous behavior—picking at her mouth and avoiding eye contact—and signs of methamphetamine use—eyelid tremors, excessively closing her eyes, and shallow breathing. Also, Appellant stated that no other person had access to her vehicle and that the last time she had allowed someone to borrow her vehicle was a month prior to the traffic stop.

Second, regarding the methamphetamine located within the kit, the jury could have reasonably concluded that the kit belonged to Appellant, despite her claim that the kit was not hers, but rather belonged to another woman who was intimately involved with her ex-husband. Officer Roach's body camera footage shows that the kit was found in a black and white patterned bag; baby clothes and toys were also removed from this bag. At the time of the traffic stop, Appellant's young child was inside Appellant's vehicle and Appellant testified that she and her child had been staying at a nearby hotel. Appellant admitted that her statements about the bag were "kind of hard to believe" and that she "understood how it does seem very much too coincidental, and too much of a crazy story."

9

The jury is the sole judge of the credibility of the witnesses and the evidence presented and makes the ultimate decision about the weight to be afforded to each. *See Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Because the jury was free to believe or disbelieve all, some, or none of Officer's Roach's testimony, Appellant's testimony, or the substance of the other evidence presented by the State, we presume that the jury resolved any conflicts in the evidence in favor of the verdict. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We have reviewed the evidence in the light most favorable to the jury's verdict and we conclude that the record before us contains sufficient evidence from which a rational jury could have inferred and found beyond a reasonable doubt that Appellant was guilty of the offense of possession of a controlled substance as charged in the indictment. Accordingly, we overrule Appellant's sole issue.

B. *Modification of Judgment*

Although not raised by either party, we note that the trial court's judgment contains a nonreversible error. We have the authority to modify and reform the trial court's judgment to make the judgment speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

Here, the trial court's judgment erroneously recites that the "Statute for [the] Offense" for which Appellant was convicted is "HSC 481.115(b)," which is a state jail felony offense. Appellant was convicted of a third-degree felony offense. Therefore, we modify the trial court's judgment to recite that the "Statute for [the] Offense" for which Appellant was convicted is "Texas Health and Safety Code § 481.115(a), (c)."

## IV. *This Court's Ruling*

As modified, we affirm the judgment of the trial court. *See* TEX. R. APP. P. 43.2(b).


W. STACY TROTTER

JUSTICE


July 7, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).
Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

11