Opinion filed March 26, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00122-CR
_____

## TIMOTHY WAYNE SNIDER JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**
**Young County, Texas**
**Trial Court Cause No. CR11969**

## M E M O R A N D U M   O P I N I O N

A jury found Appellant, Timothy Wayne Snider Jr., guilty of the first-degree felony offense of possession of methamphetamine with intent to deliver in an amount of four grams or more but less than two hundred grams. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West Supp. 2025). The trial court assessed his punishment at forty years' imprisonment in the Institutional Division of the Texas Department

of Criminal Justice and a $5,000 fine. In three issues, Appellant argues that (1) the evidence is insufficient to link him to the methamphetamine, (2) the trial court erred by denying his motion for directed verdict, and (3) the evidence is insufficient to show he possessed methamphetamine with the intent to deliver. We affirm.

*Factual and Procedural History*

On March 2, 2022, Officer Joshua Hufstedler with the Graham Police Department was on patrol near a residence known for drug activity, the Burkett house. Officer Hufstedler had reason to believe a man named Paris Kimberling, who had an outstanding federal arrest warrant for possession of methamphetamine with intent to deliver, frequented that residence. Officer Hufstedler followed a vehicle that he observed leaving the Burkett house and stopped the vehicle for a traffic violation—failure to signal a turn. Ashley Merrill, Appellant's girlfriend, was driving the vehicle, and Appellant was in the front passenger seat. Officer Hufstedler confirmed Ashley's identity, but Appellant said that he did not have his driver's license with him. Appellant told Officer Hufstedler an incorrect driver's license number. According to Officer Hufstedler, Appellant became defensive and confrontational. Sergeant Christopher Post arrived at the scene to help identify Appellant. Officer Hufstedler asked both Appellant and Ashley to get out of the vehicle.

Appellant and Ashley told Officer Hufstedler that a friend of theirs named Jaycie Burkett had rented the vehicle and that they had driven her to court that morning "so she could surrender to begin a sentence in federal prison for delivery of methamphetamine." Officer Hufstedler knew Jaycie and believed that she lived at the Burkett house. Officer Hufstedler asked Ashley for permission to search the vehicle, but she declined. Officer Hufstedler then called for a K-9 officer to come

2

to the scene. The K-9 alerted to the presence of narcotics in the front passenger door of the vehicle. Officer Hufstedler then conducted a search of the vehicle.

The jury viewed Officer Hufstedler's bodycam video, which depicted the search of the vehicle. Behind the driver's seat of the vehicle was a pink cosmetic bag containing two smaller baggies. Officer Hufstedler described that inside of the baggies there was a "crystalline substance" that was determined to be methamphetamine. One of the bags contained approximately seven grams of methamphetamine and the other approximately five grams. The bag also contained marihuana. Officer Hufstedler testified that the bag was within reach of Appellant.

In the passenger side door storage compartment of the vehicle, there was a small bottle wrapped in electrical tape that contained a liquid substance Officer Hufstedler believed to be liquid methamphetamine. There was a black backpack behind the passenger seat that contained a wallet with Appellant's identification. Inside of the black backpack was a glass pipe used to smoke methamphetamine. Officer Hufstedler found digital scales in the vehicle that he testified are used in weighing and packaging illegal narcotics. Officer Hufstedler described that he found another glass pipe used for smoking methamphetamine in the grass area where Appellant had been sitting after getting out of the vehicle.

Appellant testified at trial that he had been staying at the Burkett house because he was helping with repairs on the house. He stated, however, that it was "not a drug house." Appellant explained that he was agitated on the day of the offense because Jaycie had failed to pay him for his work on the house. According to Appellant, Jaycie was going to jail so she rented the vehicle and placed her belongings in it to take to her father's house. Ashley was driving Appellant to his parents' house in another town so that he could leave for a job in Arizona.

3

Appellant testified that it was not his backpack behind the passenger seat and that he did not know his wallet was in the backpack. He explained that he had lost his wallet and that he believed Paris, the person Officer Hufstedler was originally trying to locate for an outstanding warrant, had taken it. Appellant stated that the digital scales did not belong to him and that he did not know the pink cosmetic bag was in the vehicle. Appellant testified that the methamphetamine found in the vehicle did not belong to him and that he did not know there was liquid methamphetamine in the vehicle. During cross-examination, Appellant's credibility was impeached. Appellant admitted that he lied to Officer Hufstedler.[1] He further was impeached on cross-examination regarding the truthfulness of his sworn application for a court-appointed attorney, to which he retorted, "I'm a liar. I'm a liar. I just lie."

*Analysis*

In his first issue, Appellant argues that the evidence is insufficient to link him to the methamphetamine found during the search and, thus, insufficient to show that he *possessed* methamphetamine. In his third issue, he argues that the evidence is insufficient to show that he had the *intent to deliver* the methamphetamine.

A. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286,

---

[1]Appellant told Officer Hufstedler that he had worked making repairs to level the Burkett house. He claimed that he had not been paid for his work. He "[swore] on [his] life" to the officer that he did not know the phone number of his alleged employer Jerrod Burkett. But Appellant admitted on the stand that he had lied to the officer about that. He then testified to separate payments he did receive for the work.

288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative

as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

B. *Applicable Law: Affirmative Links*

 "Possession" is defined as "actual care, custody, control, or management." HEALTH & SAFETY § 481.002(38); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2025). In this regard, to prove unlawful possession of a controlled substance, the State must establish that the accused exercised care, control, or management over the contraband and knew that the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The elements of possession may be proven through direct or circumstantial evidence, but "[r]egardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

Appellant's mere presence in the same place as the controlled substance is insufficient to support a possession finding. *Evans*, 202 S.W.3d at 162. But presence or proximity, *when combined with other evidence*, either direct or circumstantial, may establish possession. *Id.*

Texas courts have formulated the "affirmative links rule," which provides that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans*, 202 S.W.3d at 162 n.12 (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). The affirmative links rule is routinely employed to establish possession when the accused is not in exclusive possession of the place where the drugs are found, and it is designed "to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

The following links have been applied to infer knowledge that relate to the possession of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate*, 500 S.W.3d at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12). It is not the number of identified links that is dispositive; rather, it is the logical force of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

## C. *Sufficiency of the Evidence*

Appellant argues that before the State could prove that he intended to deliver methamphetamine, it had to first prove that he possessed it. Further, because he was not in exclusive possession of the place where the methamphetamine was found, the State had to affirmatively link Appellant to the methamphetamine. While he acknowledges that there are some affirmative links between him and the contraband, Appellant maintains that the "logical force of *all* the evidence" does not support his conviction.

Officer Hufstedler testified that the pink cosmetic bag with the methamphetamine was "easily" within Appellant's reach. He explained that it was not unusual for a male to put narcotics in a bag typically used by women because drug users and sellers hide drugs in a variety of containers and objects. Officer Hufstedler found a glass pipe used to smoke methamphetamine inside of the backpack that contained Appellant's wallet. A second glass pipe was found in the grass on the side where Appellant was sitting during the search of the vehicle. There were also digital scales used for weighing and packaging illegal narcotics inside of the vehicle. A small glass bottle containing a liquid substance that Officer Hufstedler believed to be liquid methamphetamine was found in the accessible passenger side door compartment of the vehicle where Appellant had been sitting.

The jury is the sole judge of the witnesses' credibility—including Appellant's—and the weight their testimony was to be afforded. *See Winfrey*, 393

S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Therefore, we defer to the jury's credibility and evidentiary weight determinations and give due deference to their resolution of conflicts in the testimony, the weight this jury gave the evidence, and the reasonable inferences they drew from the testimony and evidence. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. In this regard, the jury could have disbelieved Appellant's testimony that he did not know that there was methamphetamine in the vehicle and that it did not belong to him. Appellant admitted that he was "a liar" and that he "just lie[s]"—having lied to Officer Hufstedler and on his sworn application for a court-appointed attorney in this case.

Based on our review of all of the evidence in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a rational jury could have found that Appellant possessed the methamphetamine. The cumulative force of all the incriminating circumstances is sufficient to support the jury's finding on possession. We overrule Appellant's first issue.

Appellant also argues that the State failed to prove that he intended to deliver the methamphetamine. "Deliver" is defined as the "transfer, actually or constructively, to another a controlled substance." HEALTH & SAFETY § 481.002(8). The intent to deliver may be established by circumstantial evidence. *Hughitt v. State*, 539 S.W.3d 531, 542 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019); *Jones v. State*, 300 S.W.3d 93, 97 (Tex. App.—Texarkana 2009, no pet.). In determining whether an individual had the intent to deliver, courts have considered the following:

> (1) the nature of the location at which the defendant was arrested; (2) the quantity of controlled substance in the defendant's possession; (3) the manner of packaging; (4) the presence (or lack) of drug paraphernalia (for either drug use or sale); (5) the defendant's possession of large amounts of cash; and (6) the defendant's status as a drug user.

*Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Jones*, 300 S.W.3d at 97. In addition, "[i]ntent can be inferred from the acts, words, and conduct of the accused." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Hughitt*, 539 S.W.3d at 542. Moreover, expert testimony from an experienced law enforcement officer may be used to help establish intent to deliver. *Jones*, 300 S.W.3d at 97.

Appellant was leaving a residence known for drug activity. Officer Hufstedler testified that the quantity of methamphetamine, approximately twelve grams total, was consistent with delivery because it was larger than that typically possessed for personal use. Sergeant Post testified that the typical amount for personal use is less than one gram. There were digital scales found inside of the vehicle used for weighing and packaging illegal narcotics. Officer Hufstedler explained that it would be unusual for a person to have scales if the methamphetamine was merely for personal use. Officer Hufstedler found two glass pipes used to smoke methamphetamine during his search. We hold that there was sufficient evidence for a rational jury to infer and find beyond a reasonable doubt that Appellant possessed methamphetamine with the intent to deliver. We overrule Appellant's third issue.

Appellant asserts in his second issue that the trial court erred in denying his motion for a directed verdict. An appeal challenging the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence, and the same standard of review applies in both instances. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Pollock v. State*, 405 S.W.3d 396, 401 (Tex. App.—Fort Worth 2013, no pet.). Having determined that the evidence is sufficient to support

Appellant's conviction, we hold that the trial court did not err in denying Appellant's motion for directed verdict. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the trial court's judgment.


BRUCE WILLIAMS
JUSTICE


March 26, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.