**Opinion filed June 4, 2026**



# In The

# Eleventh Court of Appeals

_____

## No. 11-25-00003-CR

_____

## CHRISTOPHER FORD SR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 85th District Court**
**Brazos County, Texas**
**Trial Court Cause No. 23-02346-CRF-85**

## MEMORANDUM OPINION[1]

A jury convicted Appellant, Christopher Ford Sr., of possession with intent to deliver a controlled substance, namely Eutylone, in an amount of four grams or more but less than 400 grams, a first-degree felony. TEX. HEALTH & SAFETY CODE ANN.

---

[1]Pursuant to Misc. Docket Order No. 24-9105 issued by the Texas Supreme Court on December 20, 2024, this appeal was transferred to us from the Tenth Court of Appeals. Therefore, as the transferee court, we must decide the issues raised in this appeal in accordance with the precedent of the Tenth Court of Appeals if its precedent conflicts with ours. *See* TEX. R. APP. P. 41.3.

§§ 481.103(a)(4)(B), .113(d) (West Supp. 2025). The trial court assessed Appellant's punishment at imprisonment for fifteen years in the Institutional Division of the Texas Department of Criminal Justice. TEX. PENAL CODE ANN. § 12.32 (West 2019). In a single issue, Appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

## I. *Factual Background*

On March 15, 2023, at 4:30 a.m., Officer Benjamin Tindel with the College Station Police Department (CSPD) twice observed that Appellant's vehicle failed to signal its intention to change lanes; he initiated a traffic stop. Officer Tindel approached the vehicle from the passenger's side, but Appellant asked him to come to the driver's side because the passenger's side window would not roll down. Instead, Officer Tindel asked Appellant to open the passenger side door and Appellant complied. Officer Tindel immediately observed a shotgun in the passenger seat. Officer Tindel also observed that Appellant appeared "stressed and anxious," even though he had informed Appellant that he would only give him a warning and not a ticket. Appellant told Officer Tindel that he was on the way to check out "a potential place to live"—an apartment complex funded by HUD. Officer Tindel testified that this was a suspicious explanation because it was 4:30 a.m.

The interior of Appellant's vehicle contained many bags and papers. When asked for proof of insurance, Appellant offered a "stack of papers" that were unrelated to insurance. Officer Tindel called for backup and CSPD Officer Spencer Chance arrived to assist; Officer Tindel asked Appellant to step out of the vehicle when Officer Chance arrived. Because a warrant check revealed that Appellant had an outstanding warrant, Officer Tindel detained Appellant after he exited the vehicle. Officer Tindel then observed a glass bottle filled with pills in the driver's side door compartment. The pills were brightly colored and shaped like cartoon characters;

2

because of his training and experience, Officer Tindel suspected they were MDMA or ecstasy.

Based on this discovery, the officers conducted a probable cause search of Appellant's vehicle and found (1) another glass bottle that was empty, (2) two packages bearing labels that indicated they had contained marihuana, but did not, (3) a small glass vial containing four pills that matched the pills in the larger glass bottle, (4) a marihuana grinder and a cylindrical container, which contained marihuana residue, (5) a duffle bag that contained a large quantity of small plastic baggies, and (6) the shotgun. Officer Tindel also discovered an open container of alcohol that was still cold located in the driver's side door compartment next to where the glass bottle of pills was found. The officers did not discover any cash or ledgers in the vehicle and did not search Appellant's cell phone.

Officer Tindel testified that the pills found in the small glass vial were consistent with a "user amount." He also testified that the large quantity of pills in the glass bottle was "well more than a user amount."

Officer Chance counted fifty pills from the glass bottle, measured their weight at 8.5 grams, and then weighed all the pills together with the cumulative weight being 93.5 grams; based on this, he estimated that the glass bottle contained approximately 545 pills. The four pills in the glass vial were logged separately because they were found in a different source. Officer Chance also testified that mid-March was generally the time when Texas A&M University and other local schools were on spring break.

The pills were sent to the Texas Department of Public Safety (DPS) crime laboratory for analysis. Erin Bruner, a forensic scientist with DPS, tested 4.22 grams of the pills from the glass bottle and determined that they contained Eutylone, a synthetic cathinone. Bruner explained that the weight of the pills she did not test was 89.17 grams, and that DPS policy is to test suspected controlled substances "to

3

the highest penalty." Because the total weight of the pills did not reach the next penalty level, DPS policy dictated that there was no need for additional testing.

CSPD Officer Jason Arnold, a certified drug recognition expert instructor, testified that the seized pills were "party drug[s]," like MDMA, intended to enhance a person's senses, and that the amount of pills and clear plastic baggies found in Appellant's vehicle indicated that Appellant intended to sell the pills, rather than use them himself. He testified that a "user amount" was typically more akin to two to four pills, and that the amount seized was larger than any he had ever personally seized.

On cross-examination, Officer Arnold agreed that sometimes drug dealers had cash and ledgers or records of transactions with them. He also agreed that the population of College Station likely declined when Texas A&M was on spring break because College Station was not a spring break destination.

Although the trial court's charge included, over Appellant's objection, an instruction on the lesser-included offense of possession of a controlled substance the jury convicted Appellant of the charged offense.

## II. *Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

4

Viewing the evidence in the light most favorable to the verdict requires that we consider all of the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. This deference accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Garcia*, 667 S.W.3d at 762; *Winfrey*, 393 S.W3d at 768; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt. Rather, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App.

2013) (citing *Hooper*, 214 S.W.3d at 13); *Lee*, 676 S.W.3d at 915. A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt if the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

### III. *Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence to support the jury's verdict, by which it implicitly found that he (1) possessed the Eutylone pills that were discovered in the vehicle he was driving, and (2) intended to deliver the pills.

"[A] person commits an offense if [he] knowingly . . . delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 2," such as Eutylone. HEALTH & SAFETY §§ 481.113(a), .103(a)(4)(B). To prove the intent to possess a controlled substance, the State must establish beyond a reasonable doubt that the defendant (1) exercised care, control, or management over the substance and (2) knew that the substance he possessed was contraband. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011). "'Possession' means actual care, custody, control, or management." HEALTH & SAFETY § 481.002(38); PENAL § 1.07(a)(39) (West Supp. 2025). The elements of possession may be proven by direct or circumstantial evidence, but "[r]egardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the [contraband] was more than fortuitous." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).

Texas courts have formulated the "affirmative links" rule, which provides that "[w]hen the [defendant] is not in exclusive possession of the place where the

substance is found, it cannot be concluded that the [defendant] had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the [defendant] to the contraband." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Tate*, 500 S.W.3d at 413–14; *Evans*, 202 S.W.3d at 161–62. This rule is routinely employed to establish possession when the defendant is not in exclusive possession of the location where the contraband is found; it is designed "to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

The following "links" have been considered by the courts in this analysis to determine knowledge of the possession of contraband:

> (1) the contraband was in plain view; (2) the defendant owned the premises or had the right to possess the place where the contraband was found; (3) the defendant had a large amount of cash when and where contraband was found; (4) the defendant's access to the contraband; (5) the defendant's close proximity to the contraband; (6) there was a strong residual odor of the contraband; (7) the defendant possessed other contraband; (8) paraphernalia to use the contraband was present; (9) the defendant was under the influence of narcotics when arrested; (10) the defendant's conduct indicated a consciousness of guilt; (11) the defendant attempted to escape or flee; (12) the defendant made furtive gestures; (13) the defendant had a special connection to the contraband; (14) conflicting statements were made by the occupants of the vehicle where the contraband was found; (15) the defendant made incriminating statements that connected himself to the contraband; (16) the quantity of the contraband that was found; and (17) the defendant was observed in a suspicious area under suspicious circumstances when the contraband was found.

*Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162 n.12; *Kelley v. State*, No. 10-16-00232-CR, 2017 WL 2623062, at *6 (Tex. App.—Waco June 14, 2017, no pet.) (mem. op., not designated for publication). With this analysis, it is not the number of identified links that is dispositive; rather, it is the logical force of all the evidence,

both direct and circumstantial, that is determinative. *Ingram v. State*, No. 10-23-00381-CR, 2025 WL 2476370, at *3 (Tex. App.—Waco Aug. 28, 2025, pet. ref'd) (mem. op., not designated for publication) (citing *Evans*, 202 S.W.3d at 162). Here, many of the above links were present and weighed in favor of an inference that Appellant had knowledge that he possessed contraband.

Appellant contends there is no evidence that affirmatively links him to the pills that were found in and seized from the vehicle he was driving when stopped because the State failed to establish that he owned the vehicle in which the pills were discovered. *See Poindexter*, 153 S.W.3d at 406 (The affirmative links "rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house."); *Looney v. State*, No. 06-24-00071-CR, 2025 WL 87705, at *3 (Tex. App.—Texarkana Jan. 14, 2025, no pet.) (mem. op., not designated for publication) ("Although Looney was the sole occupant of the vehicle, it was undisputed that the vehicle did not belong to him. . . . [It] was not in his exclusive possession. 'To reason otherwise would mean that any individual driving a borrowed vehicle, or one others had used or accessed, was automatically responsible for anything that might be in the vehicle, whether or not there was any reason for the person to know.'" (quoting *Borrero v. State*, No. 06-12-00118-CR, 2013 WL 1343212, at *1 (Tex. App.—Texarkana Apr. 4, 2013, pet. struck) (mem. op., not designated for publication))).

Although the evidence does not establish whether Appellant owned the vehicle that he was driving when Officer Tindel initiated the traffic stop, it is undisputed that Appellant was the driver and the only person that was present in the vehicle at the time of the stop. *See Looney*, 2025 WL 87705, at *3 ("Usually, '[t]he fact that the defendant is the sole occupant of the vehicle in which the drugs are found serves as evidence that he exercised control over that vehicle.'" (quoting

*Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.))); *Young v. State*, 842 S.W.2d 364, 366 (Tex. App.—Eastland 1992, no pet.) (considering that appellant was the driver of the vehicle when it was stopped for speeding as an affirmative link).

Appellant also points out that the four pills that were discovered in the glass vial—not a baggie—indicate that he only intended to possess those pills, and not the much larger quantity that was discovered in the separate glass bottle inside the vehicle. He also contends that evidence of the pills that were discovered in the glass bottle must be weighed against the absence of evidence that he did not attempt to flee or make any incriminating statements about the presence of the pills. Appellant contends that there was no evidence of an odor of marihuana or alcohol, nor any evidence that he was under the influence of any drugs or alcohol at the time, and that the only paraphernalia found in the vehicle was related to marihuana use.

Despite Appellant's contentions, we do not evaluate these "affirmative links" in isolation; rather, it is the logical force of all the evidence that is the determining factor.[2] *See Ingram*, 2025 WL 2476370, at *3 (citing *Evans*, 202 S.W.3d at 162). Here, Appellant appeared "stressed and anxious" when, after the stop, Officer Tindel approached the vehicle that Appellant had been driving. *See Soliz v. State*, No. 12-18-00040-CR, 2019 WL 1142473, at *4 (Tex. App.—Tyler Mar. 12, 2019, no pet.) (mem. op., not designated for publication) ("[D]uring the stop, [the appellant] appeared nervous and was visibly shaking."). A shotgun was found in the front passenger seat. *See Gordwin v. State*, No. 01-14-00343-CR, 2015 WL 1967623, at

---

[2]This is consistent with the *Jackson* standard of review. It is the jury's role to determine the weight and credibility of the evidence, and we may not reevaluate it. *See Garcia*, 667 S.W.3d at 762; *Dewberry*, 4 S.W.3d at 740. Because the jury may believe or disbelieve all, some, or none of any witness's testimony, we presume that the jury resolved any conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762; *Clayton*, 235 S.W.3d at 778. And we must consider the cumulative force of all the evidence. *See Villa*, 514 S.W.3d at 232; *Murray*, 457 S.W.3d at 448; *Hooper*, 214 S.W.3d at 13.

*5 (Tex. App.—Houston [1st Dist.] July 29, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Porter v. State*, 873 S.W.2d 729, 733 (Tex. App.—Dallas 1994, pet. ref'd) (concluding the presence of firearms where drugs were located constituted an affirmative link)).

The traffic stop occurred at 4:30 a.m., and Appellant told the officers that he was driving at that time because he intended to look at "an apartment complex that HUD paid for"; this peaked Officer Tindel's suspicions, and he detained Appellant because he had an outstanding arrest warrant. *See Kelley*, 2017 WL 2623062, at *6 (defendant observed under suspicious circumstances). When Appellant exited the vehicle, the officers saw a glass bottle in the driver's side door pocket or compartment, which contained many colorful pills that were shaped like cartoon characters. *See id.* (plain view, ready access, and close proximity). Also found in the vehicle that Appellant was driving were two packages that were labeled as if they contained marihuana, a small glass vial containing four or five pills that matched those in the larger glass bottle, a marihuana grinder that contained residue, and a large amount of small plastic baggies. *See id.* (defendant possessed other contraband when arrested). Further, an open, still-cold container of alcohol was also in the driver's side door compartment next to the glass bottle that was full of pills. *See id.*

It was estimated that there were approximately 545 pills in the glass bottle; a measured amount of 4.22 grams of these were tested and contained Eutylone. The four pills in the small glass vial matched the other pills that were seized. And Officer Arnold testified that Eutylone is a "party drug" like MDMA.

Viewing the evidence in the light most favorable to the verdict, as we must, and based on the logical force of all the circumstantial and direct evidence, we conclude that a rational factfinder could have logically inferred and found beyond a reasonable doubt that Appellant exercised care, custody, and control over the pills

that were found in the vehicle, and that he knew that the pills were a controlled substance. *See Kelley*, 2017 WL 2623062, at \*7.

Appellant contends that the evidence is insufficient to support the jury's verdict that he possessed the pills with the intent to deliver because although many pills were found, the DPS lab did not test most of them. He also asserts that the officers testified to other contraband that was seized that indicated personal drug use, such as the empty packages "labeled as marijuana," the grinder with residue, and the glass vial that contained four pills. Appellant further argues that he was arrested during spring break, when students of nearby Texas A&M University, Blinn Junior College, and local high schools, were less likely to purchase a party drug. Finally, he points out that there was no evidence that cash, ledgers, or any kind of drug transaction were found in the vehicle, and he asserts that the presence of the baggies—which did not contain any pills—do not indicate an intent to distribute.

"Deliver" is defined as the "transfer, actually or constructively, to another a controlled substance." HEALTH & SAFETY § 481.002(8). The intent to deliver contraband may be established by and inferred from circumstantial evidence, including evidence that the defendant possessed the contraband and the quantity of drugs possessed. *Espino-Cruz v. State*, 586 S.W.3d 538, 546 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *Hughitt v. State*, 539 S.W.3d 531, 542 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019); *Jones v. State*, 300 S.W.3d 93, 97 (Tex. App.—Texarkana 2009, no pet.). Intent can also be inferred from the acts, words, and conduct of the defendant. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Espino-Cruz*, 586 S.W.3d at 546. Factors that a reviewing court may consider in determining whether a person had the intent to deliver include: (1) the nature of the location at which the defendant was arrested; (2) the quantity of the contraband in the defendant's possession; (3) the manner of the packaging of the contraband; (4) the presence or lack of narcotics paraphernalia

11

for either use or sale; (5) large amounts of cash found; or (6) the defendant's status as a narcotics user. *Espino-Cruz*, 586 S.W.3d at 546; *Williams v. State*, 902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). As with the affirmative links analysis, the quantity of factors establishing intent is not as important as the logical force the factors have in establishing the elements of the charged offense. *Espino-Cruz*, 586 S.W.3d at 546. Expert testimony from experienced law enforcement officers may also be used to establish an intent to deliver. *Espino-Cruz*, 586 S.W.3d at 546; *Jones*, 300 S.W.3d at 97.

Appellant was stopped and eventually arrested near the Texas A&M University campus, at 4:30 a.m., while driving a vehicle that contained marihuana paraphernalia, pills, numerous papers and packages, and a shotgun. The DPS lab tested 4.22 grams of the 545 pills that were seized; the remaining pills weighed 89.17 grams. Officer Arnold testified that the amount of pills seized was a large, "dealer amount" and not a "user amount" because, in his experience, user amounts tended to be around two to four pills, and this amount was a larger quantity than he had ever personally seized. Officer Tindel also opined that the amount seized was more than a user amount based on his training and experience. The vehicle driven by Appellant also contained: (1) two packages that were labeled as if they had contained marihuana; (2) a small glass vial containing four pills, which matched those in the larger glass bottle; (3) a marihuana grinder that contained residue; (4) another small container that contained marihuana residue; and (5) a large amount of small plastic baggies in a duffle bag. Officer Arnold testified that the baggies were consistent with the intent to package drugs into user amounts to sell and that the presence of the large quantity of drugs, with the baggies, typically indicated an intent to sell.

In assessing the intent to deliver element of the charged offense, it is the logical force of all the evidence that is the determining factor. *See Ingram*, 2025 WL 2476370, at *3 (citing *Evans*, 202 S.W.3d at 162). As we have said, the jury is

the sole judge of the credibility of the witnesses and the weight that is to be afforded their testimony and the other evidence that is presented. *See Garcia*, 667 S.W.3d at 762; *Brooks*, 323 S.W.3d at 899. Although there is no evidence that Appellant was in possession of any cash, ledgers, or other papers memorializing drug sales, or that he was under the influence of drugs at the time of the stop, the evidence showed that he had a large amount of paraphernalia and other items in the vehicle with him when he was stopped, which is logically suggestive of his intent to deliver the contraband. *See Hooper*, 214 S.W.3d at 13.

Based on the logical force of all the evidence, we conclude that a rational factfinder could have logically inferred and found beyond a reasonable doubt that Appellant intended to deliver the large quantity of Eutylone that was in his possession. *See Ingram*, 2025 WL 2476370, at *3 (citing *Evans*, 202 S.W.3d at 162). Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to support the verdict. *Jackson*, 443 U.S. at 319; *Garcia*, 667 S.W.3d at 761.

Accordingly, we overrule Appellant's sole issue.

IV. <em>This Court's Ruling</em>

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


June 4, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.